CARLTON ANDREW SHULTS

*v.*

FANNIE SHULTS, Admr.

*Opinion filed October 23, 1907.*

1. WILLS—*when verdict sustaining will will be upheld.* A verdict which sustains a will upon the ground that the testator was of sound mind and memory will be upheld on appeal, where the witnesses testifying in favor of the proponent not only exceed the contestant's witnesses in point of numbers, but had a better opportunity of knowing the mental condition of the testator at the time the will was executed.

2. INSTRUCTIONS—*it is not improper for instruction to assume an undisputed fact.* It is not improper for instructions for the proponent in a will contest case to assume that the will was executed by the testator, where such fact is not controverted by contestants.

3. TRIAL—*party should obtain ruling upon the alleged improper conduct.* While cases may arise where the conduct of counsel is so clearly prejudicial to the rights of the opposite party that the Supreme Court will reverse the case although the trial court made no ruling, yet, ordinarily, the party claiming to be prejudiced must make an objection and obtain a ruling of the court or a refusal to rule, and mere silence upon the part of the court is not necessarily equivalent to overruling the objection.

4. APPEALS AND ERRORS—*court may grant extension of time to file bill of exceptions at same term it has fixed time.* An order fixing the time for filing a bill of exceptions or certificate of evidence may be extended by the court even though the time first fixed by order of the court has expired, if the application for extension is made at the same term at which the original order was entered.

WRIT OF ERROR to the Circuit Court of Kane county; the Hon. H. B. WILLIS, Judge, presiding.

This is a bill in chancery to set aside the will of Jeremiah Shults. The only ground that contestant sets up in the bill in support of which any evidence was offered on the hearing is the want of mental capacity in the testator. This question was decided by the jury against contestant, who has appealed to this court, and urges a reversal because the finding is contrary to the evidence, and the court gave improper instructions for proponent, and because of alleged misconduct of counsel.

The testator had been afflicted with a cancerous growth on his neck for about two years before his death. About ten weeks before his death the testator and his wife went to Plano, Illinois, to reside with Mrs. Aigler, the mother of his wife. Dr. Taylor, of Plano, treated the testator during the time he was in Plano but did not succeed in arresting the progress of the disease. On the morning of November 15, 1904, the testator went to the office of Dr. Taylor for treatment, in accordance with his usual custom. In a conversation with Dr. Taylor at his office on that occasion the doctor advised him that his trouble was very serious, and that if he desired to make a will or attend to any other matters in regard to the distribution of his property he had better attend to the same. On this occasion Dr. Taylor sent the testator home in a buggy and shortly thereafter called in consultation Dr. Lord, and it was then determined that an operation should be had as quickly as possible. Dr. Lord visited the testator about ten o'clock in the forenoon. Prep-

arations were immediately begun to remove the testator to Aurora, sixteen miles away, to a hospital, for the purpose of having the operation performed upon him. After the operation had been determined upon, the testator sent for E. L. Henning, a banker in Plano, and requested Henning to draw his will. Henning visited the testator about eleven o'clock in the forenoon and made pencil notes of such facts as were necessary to enable him to write the will. The testator furnished all the information that Henning required. Henning took the notes and went to his bank, prepared the will and returned to Mrs. Aigler's residence about the hour of twelve o'clock of the same day. The will was read over by Henning to Shults, who then and there attached his name to it, and Henning and Olsen, who had accompanied Henning to the Aigler residence for that purpose, signed the will as witnesses in the presence of Dr. Taylor. Soon after the execution of the will the testator and his wife, accompanied by Dr. Taylor, took the train to Aurora, arriving there at 1:15 o'clock P. M. The parties drove directly to St. Charles Hospital. Soon after their arrival at the hospital Dr. Brennecke, who was expected to perform the operation on the testator, was called in consultation, and after examining the testator Dr. Brennecke advised against operating. In his opinion the condition of the testator could not be relieved by an operation. The testator died in the hospital about three o'clock the following morning.

The testator owned but a small estate, estimated at $6000 or $7000 above his liabilities. He had been married twice. Carlton Andrew Shults, complainant below and plaintiff in error here, is the only surviving child of the testator's first marriage. The mother of the plaintiff in error died when the plaintiff in error was an infant less than one month old. Plaintiff in error was taken to the home of his maternal grandparents, with whom he continued to reside until after the death of his father, the testator. The evidence shows that plaintiff in error never resided with his father, and that

their association was limited to an occasional visit. By his will the testator left all of his property to his widow, Fannie Shults, who is the defendant in error herein.

J. F. SNYDER, (C. STUART BEATTIE, of counsel,) for plaintiff in error.

RAYMOND & NEWHALL, (R. S. EGAN, of counsel,) for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Plaintiff in error insists that the decree dismissing his bill should be reversed because the verdict of the jury is contrary to the preponderance of the evidence on the question of the mental capacity of Jeremiah Shults to execute the will. The theory of plaintiff in error is that the cancerous growth on the testator's neck had affected the testator's brain, producing fever and a state of delirium rendering him mentally incapable of transacting any business, and that the will executed under these circumstances should be set aside. It is not claimed that the testator was otherwise affected in his mind except as a result of the disease of which he died.

At the time the will was executed two subscribing witnesses and the attending physician were present. Edgar L. Henning testifies that on the occasion of his first visit to the testator on that morning he had an interview with him regarding his will, and that there was no other person present at that time. He testifies that he went into the room and sat down in front of Mr. Shults; that he had to lean over in order to hear what he said; that Mr. Shults could not speak above a whisper; that Mr. Shults told him that he wanted to leave his property to his wife, and stated who his heirs were; that Henning told him that he would have to mention the boy's name in the will and give him something; that the testator then told him to give the boy one dollar and to give the rest of his property to his wife. This witness fur-

ther says that he went away and drew the will in accordance with the instructions he had received from Mr. Shults, and returned again with the will soon after twelve o'clock; that on this occasion there were present four persons in the room,—Mr. Shults, Dr. Taylor, Mr. Olsen and the witness; that the witness then read the will to Shults, who signed it, and Olsen and Henning signed it as witnesses. Henning says that in his opinion Shults was capable of doing business and of making a will at the time he signed this instrument. Olsen, the other subscribing witness, corroborates Henning as to the circumstances attending the execution of the will, and says that he thought Mr. Shults was all right as to his mental condition. Dr. Allen R. Taylor testifies to his being present at the execution of the will and of seeing Mr. Shults at the office early in the morning, and again at ten o'clock in company with Dr. Lord, and of going with the deceased to Aurora in the afternoon and remaining with him constantly until six o'clock that evening. In answer to the question, "What, in your judgment, was his mental condition on that day?" he says, "He was of sound mind." In addition to these three witnesses, who were the only persons present at the time the will was executed, except the testator, proponent introduced about twenty other witnesses who were the neighbors and associates of the testator, who gave testimony that leaves no doubt that the testator had always been considered a man of sound mind and memory and fully competent to transact any ordinary business. Dr. Herman Brennecke, who had never seen the testator until about two o'clock on the day that the will was executed, testifies to the physical condition of the testator at the time when he saw him, and from the condition he found the patient in at two o'clock he did not consider that he was then in a condition to transact any business or to make a will, and that he did not consider that he was competent to do so at twelve o'clock on that day. In his opinion, from the nature of the disease and the stage it had reached at two o'clock, the tes-

tator could not have been in a condition, at twelve o'clock, to transact business or to execute a will. Dr. Lord, who is called as a witness for contestant, and who, it is stated, saw Shults at ten o'clock in the morning, was not asked in regard to his mental condition and gave no evidence on that point. No other witness testifies to any fact or circumstance bearing upon the mental condition of the testator on the day the will was executed.

From the foregoing summary of the evidence bearing upon this issue it is apparent that there is a clear preponderance of the evidence supporting the verdict of the jury. There is not only a greater number of witnesses testifying to the capacity of the testator, but their opportunities for knowing the condition of Shults at the time the will was executed were much better than those of Dr. Brennecke, who did not see him for two hours after the will was executed and after he had undergone the fatigue of a trip from Plano to Aurora. In our opinion the verdict of the jury is in accordance with the weight of the evidence.

It is next insisted by the plaintiff in error that the court erred in giving certain instructions for defendant in error. Instructions Nos. 1 and 2 are as follows:

1. "The court instructs the jury that an owner of property desiring to dispose of the same by will has the right to distribute it according to his or her own judgment, and may give nothing to children, or may divide it equally among them or other relatives, or leave the same to others not of kin to the deceased, at his or her pleasure; and of this right a property owner cannot be deprived, nor is a will made in execution of such purpose to be lightly set aside; and no will is to be deemed invalid because the jury are of the opinion that a different disposition ought to have been made; nor is the distribution made by a testator, if otherwise valid, subject to be overruled or overridden by the jury. The question of the propriety of the will in this case has nothing whatever to do with its validity, with the

single exception that the jury may consider, together with all the other evidence, as a circumstance bearing on the question, whether or not the testator had sufficient mental capacity to make a will. The test of the validity of the present will, to be determined from the evidence, is not whether, in the judgment of the jury, it is a just or proper will, but whether, at the time it was made, the testator was of sufficiently sound mind to make a will, as explained in other instructions.

2. "The jury are instructed that every person is presumed to be sane and to have sufficient mental capacity to make a will. This presumption is to be taken into account by the jury in considering, from all the evidence, whether, at the time the will here in question was made, the testator had sufficient mental capacity to make the same; and this presumption is to be taken into account by the jury, with all the other evidence, in determining the validity of the present will. If the jury find, from all the evidence in this case, that at the time the will in question was made the testator had sufficient mental capacity to understand what he was about when he made it, and to remember and appreciate the property he had for disposal and his relations toward the objects of his bounty, so as to judge for himself what he wished to do in the disposal of his property, this is sufficient mental capacity to enable him to make a valid will, whether, at the time, his general health was good or not."

The specific objection to these instructions is, that they assume that the testator executed the will in question. That fact was not in issue. There was no dispute but that the testator executed the paper purporting to be his will. Counsel for plaintiff in error apparently intended to contest the execution of the will. In the opening statement of plaintiff in error's brief we find a statement that there was evidence upon the face of the will itself that it was not executed by the testator and the witnesses at the same time, and calling attention to the appearance of the signatures, the color of

the ink, etc., and it is said that at the proper time plaintiff in error would have the original will transmitted to this court for inspection. But if plaintiff in error ever had the purpose to contest the execution of the instrument he seems to have abandoned it in this court, since the will has not been certified up, nor is there any reference to this matter in the brief of plaintiff in error except in the statement of facts as above indicated. It is not error to assume in an instruction a fact that is admitted or about which there is no controversy. *Wallace* v. *DeYoung,* 98 Ill. 638; *Chicago City Railway Co.* v. *Allen,* 169 id. 287; *Illinois Central Railroad Co.* v. *King,* 179 id. 91; *Citizens' Ins. Co.* v. *Stoddard,* 197 id. 330.

Plaintiff in error also criticises the fifth instruction given for defendant in error. We have carefully considered the fifth instruction, and in our opinion it is not open to any of the objections made to it.

It is next urged as a ground for reversing this decree that defendant in error's counsel was guilty of improper conduct in the examination of witnesses and in his argument before the jury. An examination of the record discloses the fact that the court, in most instances, promptly sustained objections when interposed to the alleged improper remarks of counsel. There is no ruling of the court in this respect that is complained of as error. Some objections were made which were not passed on by the court, and the plaintiff in error insists that the silence of the court is equivalent to overruling the objections. This does not follow. The court may have been occupied with instructions, or otherwise, so that his attention was not directed to the objectionable matter. Error is ordinarily only assignable upon improper rulings of the court. If cases may arise where the conduct of counsel is so clearly prejudicial to the rights of parties that this court would be warranted in reversing a judgment for that reason without a ruling of the court on the question, this case is not one of that class.

We are satisfied that the verdict is in accordance with the clear preponderance of the evidence and that substantial justice has been done, and that the decree ought to be, and is accordingly, affirmed.        *Decree affirmed.*

*Statement by the reporter:*

At the previous February term of this court, in the year 1907, a motion was made in this cause to strike the certificate of evidence from the record on the ground that it was not filed in proper time. In deciding said motion Mr. Justice Vickers announced an oral opinion, which the reporter of decisions deems to be of importance but which has been withheld from publication until the opinion of the court upon the merits of the case should be filed. This was done to avoid the confusion incident to having the same case appear in two different places in the Report. Said oral opinion is as follows:

This is a motion to strike the transcript of the certificate of evidence from the transcript of the record. This was a bill in the circuit court of Kane county to contest a will. The cause was tried at the November term, 1905, and the verdict of the jury was in favor of the validity of the will. Contestant made a motion for a new trial, which was not disposed of at that term but continued until the February term, 1906. On the 6th day of February, 1906, the motion for a new trial was overruled, and contestant excepted and prayed an appeal to this court, which was allowed upon bond being filed within thirty days, to be approved by the clerk of the court, and sixty days allowed to file a certificate of evidence. The certificate of evidence was not filed within the sixty days allowed by the order granting the appeal. On the 7th day of May, 1906, the February term being still in session, contestant made a motion for an extension of time in which to file the certificate of evidence. This motion was overruled by the court at that time, but subsequently, on the 18th day of May, the motion, being renewed by the

contestant; was allowed, and sixty days' additional time from the 18th day of May was allowed in which to file a certificate of evidence. The certificate of evidence, the transcript of which is now sought to be stricken, was filed on the 30th day of June in pursuance of the order and leave granted on the 18th day of May. The ground upon which this motion is based is, that the certificate of evidence was not filed within the sixty days allowed originally by the court in which to file it, nor within any other time allowed by the court before the expiration of the sixty days.

This court has often held that a bill of exceptions or a certificate of evidence must be presented within the time allowed by the order granting the appeal, or within such further time as may be allowed before the expiration of the time fixed in the original order. From this line of cases contestant assumes that the rule is that the court has no power to grant an extension, even though it may be applied for at the same term of court at which the original time is fixed. This, we think, is a misapprehension of the rule on this subject. All orders of the court entered during the term are within the breast of the court until the final adjournment of the term. The order allowing an appeal and fixing the time of filing the bond or the bill of exceptions, like any other order, may be extended if the extension is applied for during the term of court at which the order is granted. The February term of the Kane county circuit court was still in session on the 18th day of May. The court had jurisdiction of the cause and the orders that had previously been entered were within the control of the court, and there was no impropriety in the court allowing an extension of time in which to present the bill of exceptions.

The motion to strike the certificate from the record will be overruled.